966 F.2d 701
 296 U.S.App.D.C. 181
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
EDENS BROADCASTING, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Chapman S. Root Revocable Trust, Intervenor.
 No. 91-1387.
 United States Court of Appeals, District of Columbia Circuit.
 June 17, 1992.
 
 Before MIKVA, Chief Judge, and RUTH BADER GINSBURG, and KAREN LECRAFT HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on appeal from an order of the Federal Communications Commission and on the briefs and arguments of counsel. The issues have been given full consideration by the court and occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the order of the Federal Communications Commission is affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Edens Broadcasting, Inc. appeals the decision of the Federal Communications Commission (FCC) denying its application for a construction permit to move the antenna of Edens' class C FM broadcast station WRBQ-FM[1] to a new location. Edens had filed its application in response to the Commission's ruling in In the Matter of Modification of FM Broadcast Station Rules to Increase the Availability of Commercial FM Broadcast Assignments, 94 F.C.C.2d 152 (1983) (Docket 80-90 ), reconsideration granted in part and denied in part, 97 F.C.C.2d 279 (1984), which instituted new minimum antennae heights for various classes of broadcast stations. Stations that did not meet the new minimum antenna height for their current class were to be reclassified accordingly. Id. at 175-78. The minimum antenna height for a class C station was set at 984 feet. Id. at 190. Docket 80-90, however, allowed a class C station with an antenna less than 984 feet high three years from the effective date of the rule to apply to the Commission for authorization to increase its antenna height. Id. at 177-78. The three year period expired on March 1, 1987.
 
 
 5
 Edens filed its construction permit application before the deadline. Because Edens' proposed relocation site was located 26.26 miles from the transmitting facilities of WEZY-FM, an FM broadcast station licensed to Chapman S. Root Revocable Trust (Root), however, the application did not meet the Commission's minimum spacing rules. See 47 C.F.R. § 73.207.[2] Edens therefore sought a waiver of the minimum spacing rules. The ALJ, the Review Board and the Commission successively rejected the application. See Edens Broadcasting, Inc., FCC 86D-36 (ALJ May 14, 1986) (Initial Decision ); Edens Broadcasting, Inc., 2 F.C.C.R. 689 (Rev.Bd.1987) (Review Board Order ); Edens Broadcasting, Inc., 5 F.C.C.R. 2576 (1990) (1990 Order ).
 
 
 6
 Root was also required to increase its antenna height in order to maintain its class C status. As part of its effort to comply with the new requirements, Root applied to the Commission for a construction permit to move its antenna. Root's application was dismissed because it was filed outside the cut-off date for applications inconsistent with Edens' proposal. Root petitioned for reconsideration but did not request a stay of the dismissal pending reconsideration. While Root's petition for reconsideration was pending before the Commission, the March 1, 1987, deadline set in Docket 80-90 passed.
 
 
 7
 Two years later (with Root's petition for reconsideration still pending), the Commission released its Third Report and Order in MM Docket No. 86-144, In the Matter of Review of Technical Parameters for FM Allocation Rules of Part 73, Subpart B, FM Broadcast Stations, 4 F.C.C.R. 3557 (1989) (Docket 86-144 ), reconsideration denied, 5 F.C.C.R. 3715 (1990), setting the minimum distance between a class C station and a class C-1 station at 25 miles. Edens subsequently filed a petition for reconsideration of the Commission's denial of its application. In its reconsideration petition, Edens argued for the first time that because Root's application had been dismissed before March 1, 1987, and because Root had not requested a stay of that dismissal, Root should have automatically been reclassified as a class C-1 station. Edens therefore argued that under the Commission's revised spacing requirements, a waiver was no longer required.
 
 
 8
 The Commission dismissed the petition for reconsideration on two alternative grounds. See Edens Broadcasting, Inc., 6 F.C.C.R. 4327, 4327 n. 2 (1991) (1991 Order ). First, the Commission ruled that Edens' failure to raise the new argument earlier in the proceedings violated 47 C.F.R. 1.106(b)(2)(i). This rule allows new arguments to be asserted in a petition for reconsideration only if the petitioner did not have an opportunity to present the arguments earlier. 1991 Order at 4327. In the alternative, the Commission concluded that because Root's petition for reconsideration was still pending, WEZY was not yet reclassified as a class C-1 station. Id. at 4328. The Commission placed special emphasis on the fact that should it decide to grant Root's petition for reconsideration, it could reinstate Root's application nunc pro tunc. Id.
 
 
 9
 Because the disposition of this case is so clear on the merits, we do not address the Commission's procedure rationale. Edens bases its argument solely on language in the Commission's decision in Houston Mobilfone, Inc., 52 F.C.C.2d 1009 (1975). In that case, Houston Mobilfone had failed to file its petition for reconsideration with the correct Commission personnel and as a result the petition was not on record when another applicant filed what would otherwise have been a competing application. The Commission found Houston Mobilfone responsible for the misfiling and held in favor of the competing applicant. The Commission noted, however, that even had the petition for reconsideration been properly filed, the "cut-off" periods for Houston Mobilfone's initial application would not have remained in effect. The Commission explained:
 
 
 10
 The crucial and dispositive fact here is that Mobilfone's 1970 application was dismissed and that dismissal order remained in full force and effect despite the submission of a request for reconsideration, even if properly filed. Under Section 1.102(b) of the Rules, the dismissal order became effective upon release of the public notice announcing the action which had been taken. Although the Commission in its discretion may grant a stay of the effectiveness of an order pending action on a petition for reconsideration, Mobilfone did not request a stay and its 1970 application was not automatically restored to pending status by reason of the submission of a request for reinstatement.
 
 
 11
 Id. at 1012.
 
 
 12
 We believe Houston Mobilfone is distinguishable. Houston Mobilfone dealt with comparative broadcast hearings and, specifically, whether the "cut-off" dates for applications remain in place after an application has been dismissed and is pending reconsideration. A full reading of the Houston Mobilfone opinion reveals that the Commission was concerned with the effect of petitions for reconsideration on its rules governing inconsistent comparative applications. In particular, the Commission stressed that its comparative licensing rules "were adopted to establish an orderly administrative procedure for applications ready for processing.... They were not intended to frustrate the reasonable expectations of an applicant ... whose application was filed without notice that any then-pending application would preclude its acceptance." Id.; see also Walker and Townsend, Inc., 10 F.C.C.2d 585 (1967) (same).
 
 
 13
 We note that in at least one other situation, the Commission evaluated the purpose of a particular rule and concluded that an application remains pending during the reconsideration stage. In Premier Broadcasting, Inc., 7 F.C.C.R. 867 (1992), the Commission decided that an application awaiting reconsideration was still "pending" for purposes of evaluating whether it and a competing application had impermissible common ownership. Id. at 867 (footnote omitted). The Commission reasoned that "the purpose of the inconsistent application rule is to prevent expenditure of limited staff resources processing two applications which cannot both be granted.... In light of this purpose, we see no relevant distinction between applications which have been returned and are on appeal and other types of pending applications." Id. at 868 (footnote omitted). In a footnote, the Commission noted:
 
 
 14
 The Commission's Review Board has held that an applicant is not a "party" for the limited purpose of granting a request to intervene in an ongoing hearing proceeding while the staff dismissal of its application is on appeal. See Denton FM Radio, Ltd., 58 RR 2d 265 (Rev.Bd.1985). That decision does not affect whether the application is still considered pending for other purposes.
 
 
 15
 Id. n. 8 (emphasis added).
 
 
 16
 Our review of the Commission's decisions leads us to conclude that it is the Commission's policy to look to the purpose of a particular rule in determining whether an application remains "pending" while awaiting reconsideration. In this case, the relevant rule allowed a station to protect its class C status by merely filing an application to upgrade before the March 1987 deadline and specifically stated that "[i]t is not necessary that the application be granted ... by the deadline date." See 1991 Order at 2 (quoting 94 F.C.C.2d at 178). We conclude that the Commission reasonably interpreted its own rule to mean that "a station whose licensee filed an application to upgrade prior to the deadline would not be reclassified before the application was finally disposed of." Id. at 2. The Commission properly applied this interpretation in finding that the pending petition for reconsideration of the dismissal of Root's timely-filed upgrade application was adequate to preserve the class C status of WEZY-FM.
 
 
 
 [1]
 Edens' predecessor in interest was Harte-Hanks Radio, Inc. All action in this case regarding WRBQ-FM and occurring before December 12, 1984, was taken by Harte-Hanks
 
 
 [2]
 47 C.F.R. § 73.207 requires a minimum distance of thirty miles between class C transmission facilities